UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK A. HENDERSON,<br>    Plaintiff,<br><br>    v.<br><br>ROBERT MARTIN, et al.,<br>    Defendants. | No. 3:21-cv-1308 (SRU) |

**INITIAL REVIEW ORDER OF AMENDED COMPLAINT**

Mark Henderson ("Henderson") is a sentenced inmate confined at the Connecticut Department of Correction ("DOC") Corrigan-Radgowski Correctional Center ("Corrigan").[1] On October 4, 2021, Henderson, proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983. *See* Compl., Doc. No. 1. The original complaint alleged that two officials at Corrigan—Warden Robert Martin ("Martin") and Deputy Warden Oles ("Oles") (collectively, the "Defendants")—violated Henderson's Eighth Amendment rights by acting with deliberate indifference to the conditions of his confinement. *Id.* Specifically, Henderson alleged that his prison cell, located in the G-Pod housing unit ("G-Pod"), had a "partially clogged dirty ventilation register air duct and blocked ventilation return vent," which caused him to experience various medical symptoms. *See id.* at ¶¶ 1–10. For those claimed injuries, Henderson sought monetary damages and injunctive relief. *Id.* at 13–14.

On that same day, Henderson filed a motion for a temporary restraining order ("TRO") and preliminary injunction, seeking an order for the Defendants to clean Corrigan's in-cell and

---

[1] The publicly-available DOC website shows that Henderson was sentenced to twenty years of imprisonment on July 16, 2013 and that he is currently housed at Corrigan. *See Inmate Information*, Conn. State Dep't of Corr., http://www.ctinmateinfo.state.ct.us/ (last visited July 12, 2022).

housing unit air duct ventilation systems. Mot. for TRO and Prelim. Inj., Doc. No. 4, at 2. On October 8, 2021, I ordered the Defendants to show cause why the requested relief should not be granted. *See* Order, Doc. No. 9. In response, the Defendants argued Henderson's motion was moot. The Defendants submitted evidence that Henderson moved to a different housing unit, the "C-Pod," on August 3, 2021, which in effect meant that he was no longer subject to the conditions he complained of. *See* Defs.' Mem. in Response, Doc. No. 11, at 2. Furthermore, the Defendants submitted evidence showing that Henderson's new cell did not have any air duct or ventilation issues. *Id.* at 7; Chappell Decl., Doc. No. 11-2, at ¶ 14. Henderson objected to the Defendants' evidence on the basis that he "still has painful ongoing medical symptoms." Resp., Doc. No. 12, at 1. I denied as moot Henderson's request for a TRO and preliminary injunction because his complaint only addressed the ventilation system within the G-Pod, and he no longer resided in that housing unit. Order, Doc. No. 13.

Shortly thereafter, Henderson filed several motions; three of which suggested that despite Henderson's cell move, the air quality issues had not abated.[2] Because of those filings, as well as Henderson's request for injunctive relief in the complaint, I afforded Henderson thirty days to file an amended complaint to include allegations, if any, about the air quality issues in his present cell or housing unit. Order, Doc. No. 22, at 2.

On April 11, 2022, Henderson filed an amended complaint.[3] Am. Compl., Doc. No. 23. Henderson's Amended Complaint essentially mirrors the initial complaint, albeit with a few

---

[2] Those three motions are: (1) Henderson's Motion to Appoint Independent HVAC Expert, Doc. No. 14; (2) Henderson's Motion to Amend/Correct Complaint, Doc. No. 19; and (3) Henderson's Motion to Have Independent HVAC Expert Test the Air Quality, Doc. No. 20.

[3] The Amended Complaint states that Henderson incorporates by reference the exhibits previously filed. Am. Compl., Doc. No. 23, at 4–5; *see* Exhibits, Doc. No. 1-1. Because Henderson incorporates those exhibits by reference, I take judicial notice of those exhibits. *See Lloyd v. U.S.*, No. 99 C 3347, 1999 WL 759375, at *1 (N.D. Ill. Sept. 3, 1999) (Because a court may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment, a court may do the same "in conducting its initial review § 1915A."); *see also*

2

additional factual allegations. Like before, Henderson alleges that the Defendants violated his rights under the Eighth Amendment by acting with deliberate indifference to the conditions of his confinement. Although Henderson has not specified in what capacity he sues the Defendants, I liberally construe his Amended Complaint to allege that he sues them in both their individual and official capacities in light of his request for damages and injunctive relief.

### I.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—to give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir.

---

*Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (determining that a reviewing court can consider the complaint, documents attached to the complaint, documents incorporated by reference in the complaint, and public records when considering a motion to dismiss).

2015) ("A *pro se* complaint must allege enough facts to state a claim to relief that is plausible on its face.") (cleaned up).

## II.     FACTUAL ALLEGATIONS

At Corrigan, Henderson's housing assignment changed several times.[4] Prior to living in the G-Pod, Henderson resided in Cell 109 of the D-Pod housing unit ("D-Pod"). *See* Exhibits, Doc. No. 1-1, at 10. Sometime between June 4, 2021, and June 9, 2021, Henderson moved to the G-Pod; specifically, Cell 105. *Id.* at 5, 10; Am. Compl., Doc. No. 23, at ¶ 3, 6. By August 8, 2021, Henderson moved from Cell 105 to Cell 113 of the G-Pod. *See* Exhibits, Doc. No. 1-1, at 21. And by August 20, 2021, he moved out of the G-Pod and into Cell 209 of the C-Pod housing unit ("C-Pod"). *Id.* at 19. As of April 2022, Henderson resides in Cell H-206 (presumably the "H-Pod"). Am. Compl., Doc. No. 23, at ¶ 21.

*Issues in G-Pod*

On June 9, 2021, Henderson woke up experiencing several medical conditions, including "spitting out a mixture of brown[,] bloody[,] nasal mucus," tonsil uvula, a dry cough and a burning sensation in the back of his throat. *Id.* at ¶ 1. His symptoms were caused by the "partially clogged dirty ventilation register air duct and blocked ventilation return vent" in his cell.[5] *Id.* The vent located at the foot of Henderson's bed "constantly [blew] out air mixed with

---

[4] The exact dates of these transfers are unclear because Henderson does not specify in the Amended Complaint. Thus, I derive these dates from the inmate request forms and the dates and housing assignments included therein. *See* Exhibits, Doc. No. 1-1. Oles's declaration, submitted in support of the Defendants' show cause response, provides an alternate record of Henderson's housing assignments. Oles Decl., Doc. No. 11-1, at ¶¶ 7–9. But for purposes of this initial review, I do not take judicial notice of them. *See Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 550 (S.D.N.Y. 2001) (declining to "consider the affidavits and exhibits submitted by the parties in pending motions" when deciding motion to dismiss).

[5] Henderson alleges that "[t]he division of Occupational Health and Safety" has found "clear evidence that ductwork can be contaminated with dust and can act as a reservoir for microbial growth under normal conditions." Am. Compl., Doc. No. 23, at ¶ 8. He asserts that the Environmental Protection Agency has stated "that air ducts should be cleaned if ducts are clogged with excessive amounts of dust and debris," which was the case with "both air duct vents within" his cell. *Id.* at ¶¶ 8–9.

dust [and] rust debris directly on [him] and everything within [his] living area surface." *Id.* at ¶ 2. Separately, the return vent located over his toilet was inoperable due to "dust debris build-up in the duct vent." *Id.* At the time, Henderson resided in Cell 105 of the G-Pod. *Id.* at ¶ 6.

Due to his onset of symptoms, Henderson immediately requested medical treatment. *Id.* at ¶ 3. Medical staff prescribed Henderson with 600 milligrams of Mucinex tablets, advised him "to not sleep with the vent exposed in [his] cell" and to block the "vent opening" with sheets of paper. *Id.* Henderson, however, was prohibited from following those directives because (1) Corrigan's housing rules forbid any tampering with the vents; and (2) Henderson had no other source of air circulation because of the sealed windows in the housing units. *Id.* at ¶ 5.

On June 10 and 12, 2021, Henderson alerted Officer LaRose and the G-Unit Manager about his medical symptoms and the issues with the ventilation system in his cell. *Id.* Henderson requested that his "in[-]cell ventilation system be disinfected." *Id.*; Exhibits, Doc. No. 1-1, at 5. Also concerning to Henderson was that when either he or the inmates in the neighboring cell used the toilet, the air within Henderson's cell became "saturated with the fumes of feces [and] urine." Am. Compl., Doc. No. 23, at ¶ 6; Exhibits, Doc. No. 1-1, at 5. Lieutenant Peau responded by informing Henderson that he lacked authority to order any cleanings of the ventilation system but would forward the information to the maintenance unit. Am. Compl., Doc. No. 23, at ¶ 7; Exhibits, Doc. No. 1-1, at 5.

Similarly, Henderson submitted an inmate request, dated June 10, 2021, to Martin, where he requested that there be an "[e]ntire cleaning" of his cell's ventilation system to alleviate his medical symptoms. Am. Compl., Doc. No. 23, at ¶ 11; Exhibits, Doc. No. 1-1, at 9. On June 15, 2021, Oles responded that he would have a Lieutenant "look into this ASAP" and that he would "check with maintenance to see when the vents are due for a cleaning." Am. Compl., Doc. No.

5

23, at ¶ 14; Exhibits, Doc. No. 1-1, at 9. Notwithstanding Oles's response, "nothing was done" to resolve the air quality issues in the Henderson's cell. Am. Compl., Doc. No. 23, at ¶ 15. Consequently, Henderson's medical issues persisted. *Id.* Several days later, Henderson submitted a follow-up request to Oles, to which he received no reply. *Id.* at ¶ 16; Exhibits, Doc. No. 1-1, at 12.

About one month later, Henderson spoke to Oles during his unit inspection tour and inquired why maintenance had not conducted an inspection and cleaning of his cell air duct or housing unit ventilation system. Am. Compl., Doc. No. 23, at ¶ 17. Oles responded that Henderson had been provided with a response on June 9, 2021 and walked away. *Id.* at ¶ 18. Finally, Henderson wrote to maintenance staff, Officer Gustuffson, to explain the issue with his air ducts. *Id.* at ¶ 20; Exhibits, Doc. No. 1-1, at 21. No reply followed. Am. Compl., Doc. No. 23, at ¶ 20.

Eventually, Henderson moved to Cell 113 of the G-Pod. *Id.* at ¶ 13. But that effort proved futile because that cell had the same issues as his former cell. *Id.* As for Henderson's former cell, "no cleanings were done to the inside of … [Cell 105's] ventilation air duct system[,] other than a cleaning [and] painting of the outside vent cover on [August 25, 2021]." *Id.* at ¶ 23.

1. *Issues in H-Pod*

As of April 2022, Henderson resides in Cell 206 of the H-Pod. *Id.* at ¶ 21.[6] Still, Henderson's medical symptoms persist despite being prescribed Lorataine and Triamcinolone Acetonide Nasal Spray. *Id.* at ¶ 21. Currently, Henderson is awaiting a follow-up appointment with an ear, throat, and nose physician for allergy testing. *Id.*

2. *Grievances*

---

[6] Before this housing assignment, Henderson moved to Cell 209 in the C-Pod at some point in August 2021.

Henderson filed a Level-1 Grievance dated June 23, 2021, asserting "deliberate indifference" to his need for "sanitary in[-]cell air circulation" with respect to his cell conditions in Cell 105 of the G-Pod. *Id.* at ¶ 22; Exhibits, Doc. No. 1-1, at 15–16. On June 30, 2021, Martin denied his grievance for the stated reason that his allegations were "unsubstantiated." Am. Compl., Doc. No. 23, at ¶ 22; Exhibits, Doc. No. 1-1, at 15. Henderson appealed that decision. Exhibits, Doc. No. 1-1, at 15.

On August 27, 2021, Henderson's appeal was "upheld" for the stated reason that "[c]orrective action ha[d] been taken in response to [his] grievance" and "[m]aintenance staff ha[d] completed general maintenance to the supply grill[] to include removing debris, scraping, and painting." Exhibits, Doc. No. 1-1, at 17. Yet on July 6, 2021, Henderson was informed by a maintenance staff member, Officer Kalinoski, that Corrigan does not have a procedure for cleaning "inmate cell air duct ventilation systems." Am. Compl., Doc. No. 23, at ¶ 22.

## III.   DISCUSSION

Construing his claims most liberally, Henderson raises Eighth Amendment claims for unconstitutional conditions of confinement pursuant to 42 U.S.C. § 1983.

*A. Individual Capacity Claims*

A claim that conditions of confinement violate the Eighth Amendment requires allegations establishing both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prove the objective element, a plaintiff must demonstrate that the conditions of his confinement result in "unquestioned and serious deprivations of basic human needs" or deprived him "of the minimal civilized measure of life's necessities." *Anderson v. Coughlin*, 757 F.2d 33, 34–35 (2d Cir. 1985) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). With respect to the subjective element, a plaintiff must show that the prison official acted with a

"sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In cases involving prison conditions, the requisite state of mind is one of "deliberate indifference" to inmate health and safety. *Id.* (quoting *Wilson*, 501 U.S. at 302–03).

As to the objective component, the Second Circuit has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim." *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015). Rather, the determination of whether an unsanitary condition states a claim under the Eighth Amendment "depends on both the duration and severity of the exposure." *Id.*

1. *Objective Prong*

Prisoners are entitled to adequate sanitation. *See Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981) (noting that prisoners are entitled to, *inter alia*, basic sanitation). While housed in the G-Pod, Henderson's Amended Complaint suggests that he endured poor in-cell air quality due to an inadequate ventilation system. *See* Am. Compl., Doc. No. 23, at ¶¶ 3–20. Due to those conditions, Henderson alleges that he was forced to seek medical attention. *Id.* at ¶¶ 3, 5, 9–10, 12, 21. And though months have passed, his symptoms have not abated. *Id.* Other courts have held similar allegations sufficient to state an Eighth Amendment claim. *See Devalda v. Faucher*, 2022 WL 356427, at *5 (D. Conn. Feb. 7, 2022) (allowing an Eighth Amendment claim to proceed where prisoner alleged, *inter alia*, that the prison gym had poor air ventilation); *Baltas v. Erfe*, 2020 WL 1915017, at *29 (D. Conn. Apr. 20, 2020) (holding that, for purposes of initial review, a prisoner sufficiently alleged an Eighth Amendment claim by alleging, *inter alia*, that the "[prison] ventilation system was not operational and/or the air filters were not changed on a regular basis"). Therefore, I conclude that the unsanitary cell conditions Henderson alleged meet the objective standard.

2. *Subjective Prong*

Preliminarily, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (cleaned up).

In *Tangreti v. Bachmann*, the Second Circuit held that "after *Iqbal*, there is no special test for supervisory liability," and instead, "[t]he violation must be established against the supervisory official directly." 983 F.3d 609, 618 (2d Cir. 2020). Therefore, a government or prison official is not personally involved in the violation of a plaintiff's constitutional rights simply "by reason of [the official's] supervision of others who committed the violation." *Id.* at 619. Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676).

Although receipt of a letter or grievance without personally investigating or acting is not enough to establish a supervisor's personal involvement, a plaintiff can establish personal involvement "where a supervisory official receives and acts on a prisoner's grievance." *Delaney v. Perez*, 2021 WL 3038642, at *3 (S.D.N.Y. July 16, 2021) (citing cases) (cleaned up).

Applying those principles here, Henderson has adequately alleged that both Defendants were conscious of the issues in Henderson's G-Pod Cell 105. Beginning in June 2021, Henderson submitted several inmate request forms addressed to both Defendants. *See* Exhibits,

9

Doc. No. 1-1, at 9, 12. At least Oles responded to one of those requests stating that he would look into the issue "ASAP." *Id.* at 9. Yet, Henderson had to wait nearly two months to be moved to a new cell within the G-Pod; and over two months to be moved out of the G-Pod. And, it was not until August 25, 2021 that any cleaning to resolve the issue in Cell 105 was undertaken. Martin, too, acted on Henderson's complaints by denying Henderson's Level-1 Grievance as "unsubstantiated." Exhibits, Doc. No. 1-1, at 15. Beyond the inmate request forms, at least Oles had additional notice of Henderson's concerns given that Henderson directly spoke with Oles about his cell's condition during Oles's unit inspection tour, but Oles "walked away." Am. Compl., Doc. No. 23, at ¶ 17.

Construed most favorably to Henderson, the allegations and present record suggest that the Defendants acted with deliberate indifference by failing to take steps to remedy Henderson's exposure to poor in-cell air quality while he resided in the G-Pod. Thus, I will permit Henderson to proceed on his Eighth Amendment claim for damages against the Defendants for further development.

B. *Official Capacity Claims*

Additionally, Henderson seeks a "permanent injunction mandating that [the Defendants] implement a routine cleaning schedule for individual inmate cell ventilation air duct systems within [Corrigan] housing units." Am. Compl., Doc. No. 23, at 13. Thus, I construe Henderson's Amended Complaint to raise an Eighth Amendment claim against the Defendants in their official capacities.

As an initial matter, any damages sought against the Defendants (who are state employees) in their official capacities are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). However, the Eleventh Amendment does not bar Henderson

from seeking prospective injunctive relief for an ongoing constitutional violation from a state official in his or her official capacity. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974); *see also In re Deposit Ins. Agency*, 482 F. 3d 612, 617 (2d Cir. 2007) ("[A] plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for "prospective injunctive relief from violations of federal law.") (cleaned up). That exception, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Instead, under the exception, "suits for prospective relief against an individual acting in his official capacity may be brought to end an ongoing violation of a federal law." *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020).

Despite having an opportunity to amend, doc. no. 22, Henderson has not alleged that he is *still* subject to the same air quality that he experienced as a G-Pod resident. Admittedly, Henderson alleges that his medical symptoms have persisted. But that fact tells me nothing about the air quality in Henderson's *present* cell. Henderson moved out of the G-Pod in August 2021. Presently, he lives in the H-Pod. Without any claim about the ventilation system in his *present* cell, I cannot conclude that Henderson is subject to an ongoing Eighth Amendment violation. Nor can I conclude that the broad remedy of cleaning the ventilation air duct system within all Corrigan housing units is warranted on these facts. As such, Henderson cannot proceed on a request for injunctive relief against the Defendants in their official capacities. Therefore, I dismiss as not plausible Henderson's request for injunctive relief.

## IV. REMAINING PENDING MOTIONS

A. *Appointment of HVAC Expert*

Henderson has filed three separate motions related to an appointment of an HVAC expert. In his first motion, Henderson requests an appointment of an HVAC expert to provide an assessment of the Corrigan air ventilation system prior to ruling on his motion for injunctive relief.  Mot. to Appoint, Doc. No. 14. Henderson filed a second motion requesting that I treat his motion for appointment of an HVAC expert as a standalone motion, noting that expert testimony can be important for an opposition to a defense motion for summary judgment. Mot. to Treat Mot., Doc. No. 15. In the third motion, Henderson moves for an appointment of an HVAC expert to test the air quality and conduct an examination of the supply ductwork at Corrigan for cells G-105, G-113, C-209, and H-206 "due to [his] ongoing symptoms." Mot. to Appoint, Doc. No. 20. In support of this last motion, Henderson challenges the Defendants' assertion that he is no longer subject to poor air quality after being moved from his cells in the G-Pod. *Id.* at 1–2. He maintains that the Defendants "are wrong as [his] medical symptoms still remain [and] necessitate ongoing medical treatment." *Id.* at 2.

Under Federal Rule of Evidence 706, a court may, on its own motion or on a motion by any party, appoint an expert witness. *See* Fed. R. Evid. 706(a). "Rule 706 permits a court to appoint an expert witness, but not as a partisan for one party or another." *Brown v. Dirga*, 2016 WL 2743486, at *2 (D. Conn. May 11, 2016). "[M]ost judges view the appointment of an expert as an extraordinary activity that is appropriate only in rare instances." *In re Joint E.& S. Dists. Asbestos Litig.*, 830 F. Supp. 686, 693 (E.D.N.Y. 1993) (cleaned up). "The appointment of an expert witness pursuant to Rule 706 is not intended to aid litigants, but rather to aid the Court, through the services of an impartial expert, in its assessment of technical issues." *Brown v. Johnson & Johnson Pharm.*, 2015 WL 235135, at *2 n.1 (D. Conn. Jan. 16, 2015) (cleaned up).

12

The decision to appoint an expert under Rule 706 "is committed to the sound discretion of the district court." *Azkour v. Little Rest Twelve, Inc.*, 645 F. App'x 98, 102 (2d Cir. 2016). The court should consider "such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view." *Dirga*, 2016 WL 2743486, at *1 (cleaned up).

As an initial matter, Henderson's first motion for appointment of an HVAC expert must be denied because I have determined that his complaint does not support an official capacity claim for injunctive relief.

Henderson's two other motions related to an appointment of an HVAC expert appear to seek appointment of an HVAC expert in order to support his Eighth Amendment claims. But any such appointment would be contrary to the purpose of Rule 706. Although Henderson's *in forma pauperis* status under 28 U.S.C. § 1915 permits him to proceed with his case without prepaying filing fees, "it does not authorize payment or advancement of discovery expenses by the Court." *El-Massri v. New Haven Corr. Ctr.*, 2019 WL 3491639, at *3 (D. Conn. July 31, 2019) (cleaned up). Thus, Henderson's motions seeking an appointment of an HVAC expert to support his claim and at the Court's expense are **DENIED** without prejudice. At a later stage in this matter, and with the benefit of more fully developed record, I may determine that an appointment of an HVAC expert is appropriate to assess the merits of the parties' positions relevant to Henderson's claims.

B. *Motion for Contempt*

Finally, Henderson requests that I issue an order for contempt and direct the Defendants to respond to his first motion to appoint an independent HVAC expert and his motion to treat his motion to appoint an HVAC expert as a standalone motion. Mot. for Contempt., Doc. No. 16.

A party may be found in civil contempt for failure to comply with a court order if (1) the order is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

At present, there is no basis to issue an order of contempt. The Defendants have not failed to comply with any court order. Furthermore, the Defendants filed an objection to Henderson's motion on December 20, 2021. Obj., Doc. No. 17. Accordingly, Henderson's motion for contempt is **DENIED**.

**ORDERS**

The Court enters the following orders:

(1) The case shall proceed on Henderson's Eighth Amendment claims against Deputy Warden Oles and Warden Martin in their individual capacities. I dismiss any claims against the Defendants in their official capacities.

I **deny** without prejudice Henderson's motions for seeking appointment of an independent HVAC expert. Mots. to Appoint, Doc. Nos. 14, 20; Mot. to Treat Mot., Doc. No. 15. I also **deny** Henderson's motion for contempt. Mot. for Contempt., Doc. No. 16. I **deny** as moot Henderson's motion to amend, doc. no. 19, because he filed an amended complaint after I issued an order permitting him to do so. *See* Order, Doc. No. 22; Am. Compl., Doc. No. 23. I **deny** as moot Henderson's motions for status (Docs. Nos. 21, 24, 25, 28) in light of this initial review order.

(2) The clerk shall verify the current work addresses for Deputy Warden Oles and Warden Robert Martin with the DOC Office of Legal Affairs, mail a waiver of service of process

14

request packet containing the Amended Complaint (Doc. No. 23) and this Initial Review Order to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.

If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

 (3) The clerk shall send a courtesy copy of the Amended Complaint (Doc. No. 23) and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) **The Defendants** shall file their response to the Amended Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If **the Defendants** choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.  The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Henderson changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Henderson must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Henderson has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) Henderson shall utilize the Prisoner Efiling Program when filing documents with the court. Henderson is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on the Defendants' counsel by regular mail.

It is so ordered.

Dated at Bridgeport, Connecticut this 12th of July 2022.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge